Bobby Joe CARR, Appellant,

v.

STATE of Texas, Appellee.

No. 11–94–146–CR.

Court of Appeals of Texas,
Eastland.

July 27, 1995.

Rehearing Overruled Aug. 31, 1995.

James J. Elliott, Stephenville, for appellant.

John Terrill, Dist. Atty., Stephenville, for appellee.

DICKENSON, Justice.

The jury convicted Bobby Joe Carr of felony possession of marihuana,[1] found that two or more of the four enhancement allegations were true,[2] and assessed his punishment at confinement for 99 years. We affirm the conviction.

### Point of Error

Appellant presents a single point of error. It reads in full as shown:

---

1. See TEX.HEALTH & SAFETY CODE ANN. § 481.121 (Vernon Supp.1995). The offense was prior to the effective date of the 1993 amendment which rewrote this section of the code. At the time of the offense, possession of more than four ounces of marihuana was a felony of the third degree.

2. See TEX.PENAL CODE ANN. § 12.42(d) (Vernon 1994) which authorizes punishment for life or for any term of not less than 25 nor more than 99 years.

The trial court erred by denying appellant's motion to suppress evidence obtained as a result of an illegal search of appellant's vehicle.

## Background Facts

There is no challenge to the sufficiency of the evidence. The evidence which was obtained from the warrantless search of appellant's vehicle is sufficient to prove the allegations of the indictment that on or about February 22, 1994, appellant knowingly possessed more than four ounces, but less than five pounds, of marihuana in Erath County. During the punishment phase, appellant admitted that he is a drug addict and that he had been convicted of the four prior felonies alleged for the enhancement of punishment.

## The Warrantless Search

Appellant argues that the warrantless search was illegal and that, consequently, the evidence which was discovered was not admissible. The State argues that there was a legal investigative stop, that appellant gave a valid consent to the warrantless search, and that the marihuana which was found in appellant's vehicle was properly admitted into evidence. There were only five witnesses during the "guilty or not guilty" phase of trial. One of them was used to prove the chain of custody of the marihuana which was found in appellant's pickup, and one of them was the chemist who identified the contraband as a one-pound brick of marihuana. Testimony of the three witnesses who developed the facts as to the warrantless search can be summarized as follows:

(1) Deputy Sheriff Brad Green testified that he was watching appellant's trailer house with binoculars during the noon hour on February 22, 1994, when he saw appellant come out of the trailer with a white plastic bag in his hand, get into a blue Toyota pickup, and drive onto Highway 377. Deputy Green followed in an unmarked car, and he contacted Deputy Kevin Fincher on the police radio. That deputy was in a marked vehicle, and he did not want to get close enough to be seen. The two deputies followed appellant in a roundabout trip around the east end and then around the north side of town. The two deputies remained in radio contact while they followed appellant's vehicle. Not long before appellant was stopped, Deputy Green went straight (to try to keep appellant from realizing that he was being followed) when appellant turned onto Dale Street. The marked vehicle continued to follow appellant, and Deputy Green turned around to get behind the other two vehicles. About that time, Deputy Fincher advised Deputy Green on the police radio that he was going to make the stop because he thought appellant had seen him.

When he arrived at the place where appellant had been stopped, Deputy Green was told by Deputy Fincher that Deputy Fincher had located marihuana in appellant's vehicle. Deputy Green said that there was a "white plastic bag" containing "a large brick-shaped object of green leafy substance." Deputy Green said that it smelled like marihuana.

2. Deputy Sheriff Kevin Fincher testified that he received a tip from a cooperating individual on February 22, 1994, at about 11:00 a.m. that appellant was in possession of one pound of marihuana and that he was to make a delivery at about 12:30 noon that same day in the Wal–Mart parking lot in Stephenville. Deputy Fincher had his partner, Deputy Green, set up surveillance at the trailer park where appellant lived. Deputy Fincher was in a vehicle which was marked as a Sheriff's Department car. Shortly after noon, Deputy Fincher was contacted over the police radio by Deputy Green and told that appellant was leaving the trailer park. Deputy Fincher joined in the "moving surveillance" by staying a good distance behind appellant's vehicle and Deputy Green's unmarked vehicle. Deputy Fincher tried to stay far enough behind that he would not be seen by appellant but close enough to provide "backup" for his partner. After they had gone around the east

end and back across the north side of Stephenville, appellant turned onto Dale Street. Deputy Green thought he might have been spotted, so he dropped out. Deputy Fincher pulled up closer behind appellant, and he turned on his flashing lights and stopped appellant when it appeared that he had been seen by appellant.

Deputy Fincher asked for appellant's driver's license, and appellant handed him his Texas Department of Corrections identification card and his driver's license. Appellant was visibly nervous. Deputy Fincher then asked appellant if he minded if Deputy Fincher looked through the cab of his pickup, and appellant said to "go ahead." When he opened the driver's side door of the pickup, Deputy Fincher noticed a "real strong smell" of raw marihuana. Deputy Fincher found a compressed brick of marihuana in a plastic sack on the passenger's side floorboard of the pickup. At that point Deputy Fincher advised appellant that he was under arrest for possession of marihuana.

On cross-examination, Deputy Fincher said that he stopped appellant because the information which he had received from a confidential source (the cooperating individual) had been corroborated by appellant's actions. Appellant had been seen leaving his trailer with a plastic sack which was the right size to contain the pound of marihuana which the informant said that appellant would be taking for the delivery which was to occur near the place where appellant was stopped and about the same time as the stop. Deputy Fincher explained the roundabout route which appellant had taken from his trailer to the place where he was stopped as a "heat run" which drug couriers sometimes take to try to make sure they are not being followed. Deputy Fincher said that he made the stop before appellant got to the Wal–Mart parking lot because he felt like appellant had spotted him in the marked sheriff's department vehicle.

Deputy Fincher said that he did not get a warrant because appellant gave him permission to look inside the truck. Deputy Fincher had refused to reveal the identity of the confidential informant prior to the time of trial, but he did reveal the informant's identity during the trial after a hearing outside the presence of the jury. The informant, or cooperating individual, was Arthur Glen Williams. The informant was given leniency on pending charges against him in return for his cooperation in giving information and in making drug arrests of other people in Erath County. The case against appellant was the first case in which Williams assisted the Sheriff's Department, but he has assisted in making several other cases since then.

Deputy Fincher was playing the role of buyer on this transaction; appellant was carrying the marihuana for delivery at the Wal–Mart parking lot; and the plan was to make the arrest just before the marihuana was delivered.

3. Arthur Glen Williams was on parole from the Texas Department of Corrections, and he was also on misdemeanor probation for possession of a small amount of marihuana. Williams had three felony convictions. Shortly before he agreed to help the sheriff's department, he was arrested for violation of his misdemeanor probation by having "dirty" urine analyses. Williams gave Deputy Fincher information on the drug traffic in Erath County, and he helped him make the case against appellant. Williams said that he did not talk appellant into committing the offense, but he agreed that he did provide appellant with the opportunity to sell one pound of marihuana for $800. They had been in jail together, and Williams knew that appellant "was already dealing" marihuana.

We hold that there was no "illegal search." Deputy Fincher had probable cause to make an investigative stop. He had received information from a cooperating individual who had seen the marihuana in appellant's possession, and that information had been corroborated by Deputy Green who saw appellant leave his trailer house with a package at a time which fit the information furnished by

the cooperating individual. The information had been further corroborated by appellant's action in driving towards the designated place near the time of the delivery which appellant and the cooperating individual had agreed upon. See and compare *Angulo v. State,* 727 S.W.2d 276 (Tex.Cr.App.1987), where the court said:

> [T]he "totality of the circumstances" approach in determining probable cause ... applies to warrantless as well as warrant searches.... [T]he duty of the reviewing court is to look to the "totality of the circumstances" to determine if there exists a substantial basis for concluding that probable cause existed at the time of the questioned action.

\*    \*    \*

Appellant argues that his behavior in the instant case is consistent with innocent activity.... [T]he relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of non-criminal acts.... [S]eemingly innocent behavior becomes suspicious in light of the anonymous tip. [The tip is even stronger when it comes from a cooperating individual who is known to the officers.]

\*    \*    \*

In conclusion, the concept of probable cause is a fluid one. It deals in probabilities, not certainties.

The temporary detention in this case is constitutionally permissible if the officers had "reasonable suspicion," a lesser standard than "probable cause." The officers did have "reasonable suspicion" to justify the temporary investigative stop. See *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990);[3] *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct.

1868, 20 L.Ed.2d 889 (1968); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Consequently, there was no illegal stop. Appellant gave permission for the deputy to look inside his pickup, and this eliminated the requirement of a search warrant. The strong smell of marihuana gave the deputy probable cause to make the warrantless arrest. Appellant's point of error is overruled.

The judgment of the trial court is affirmed.

---

**3.** Appellant attempts to distinguish *White* by pointing out that the suspect in that case took the most direct route to the destination named. While appellant took a roundabout route in the case before us, the information came from a known cooperating individual. This would be more reliable than an anonymous tip because the cooperating individual was known by the officers and subject to adverse consequences if he gave them bad information.