The STATE of Texas, Appellant,

v.

Russell Keith ENSLEY, Appellee.

No. 14–97–00175–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 23, 1998.

---

narcotics detection dog, Bubba, at Houston Intercontinental Airport. Bubba, a trained and certified narcotics detection dog, alerts to the presence of marihuana, cocaine, heroin, and methamphetamine by scratching and biting the source of the smell. Corley and Bubba checked the bags on the transfer conveyor belt from a flight from Los Angeles, California. As Bubba worked his way among the bags coming from the airplane, he alerted on a hard-sided suitcase and a gym bag. Corley pulled the bags from the conveyor belt and Bubba checked the remaining luggage. Bubba did not alert on any other suitcases.

When Bubba finished sniffing the luggage, Corley checked the tags on the bags and learned that they belonged to someone named Russell Enslow or Russell Ensley.[1] Corley placed the two bags and Bubba in his truck and drove to gate 32 where the luggage was scheduled to be taken to be placed on a connecting flight. Corley also paged Officer Daniel G. Mitchell ("Mitchell") to meet him at the gate. Corley met Mitchell, showed him the luggage and luggage tags, and relayed the information about the situation. Corley then returned to his truck.

At the gate, Mitchell looked for someone in the passenger area who was nervous or was watching the luggage being loaded on the plane. Mitchell testified that in his experience with drug couriers that they often looked nervous, anxious, or watched the luggage being loaded on the plane. While at the gate, Mitchell noticed a man staring out the window, disheveled, and nervously pacing back and forth. This man was Ensley.

Mitchell approached Ensley, identified himself as a police officer, and asked if he could speak with him. Ensley agreed to speak with Mitchell. Mitchell asked to see Ensley's ticket and identification. While looking at the ticket, Mitchell noticed two baggage claim tags which matched the numbers Mitchell recorded from the luggage on which Bubba alerted. Mitchell informed Ensley that a narcotics dog had located and alerted to two pieces of luggage he had

Alan Curry, Houston, for appellant.

Ned William Barnett, Michael Pena, Houston, for appellee.

Before MURPHY, C.J., and HUDSON and FOWLER, JJ.

## OPINION

FOWLER, Justice.

Appellant, the State of Texas ("State") appeals a pretrial motion to suppress evidence in the actions against Russell Keith Ensley ("Ensley") for possession of cocaine, weighing at least 400 grams, with intent to deliver, and for possession of marihuana in a useable quantity of more than five pounds and less than fifty pounds. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(f), 481.121 (Vernon Supp.1998) We reverse the trial court ruling and remand the causes for further proceedings consistent with this opinion.

### THE CONTROVERSY

On July 11, 1996, Houston Police Officer Billy Corley ("Corley") was working with his

1. Corley noticed a discrepancy in the baggage tags. The computer printed tag read Russell Enslow, but the handwritten tag read Russell Ensley.

checked. Mitchell also asked Ensley why a narcotics dog would alert to his luggage. Ensley stated the luggage contained only his clothing and gifts for his children, and he did not know why a narcotics dog would alert to his bags. Mitchell then asked if he could bring the bags up to the gate for Ensley to identify them and whether he could search the bags. Ensley consented to identify the bags and to allow Mitchell to search the bags.

Once Corley brought the bags to the gate, Ensley identified the two bags as his. Mitchell repeated his request to search the bags, and Ensley again agreed to allow Mitchell to search the bags. When Mitchell searched the bags, he found the large suitcase contained a large gift wrapped package but no clothing. Ensley stated the package was a gift for his daughter and that he preferred the officers not open the package. Mitchell complied with Ensley's request and did not open the package. When Mitchell searched the gym bag, he found Ensley's clothing and two smaller gift wrapped packages. Again, Ensley stated that the two packages were gifts for his children and that he did not want the police to open them. Again, Mitchell complied with Ensley's request and did not open the packages. At this time, Mitchell noticed the smell of fabric softener or what he thought was fabric softener emanating form the gift wrapped packages. Mitchell testified that in his thirteen years of experience he knew that a large percentage of drug couriers use fabric softener to mask the odor of narcotics so that a narcotics dog will not alert to them. Mitchell also testified he smelled the odor of marihuana emanating from the gift wrapped packages.

At this point in time, Mitchell informed Ensley that he was going to detain him and his bags until he could secure a search warrant for the gift wrapped packages. Corley transported the bags to the police office in Terminal B and Mitchell escorted Ensley to that same office. At the office, Mitchell informed Ensley of his *Miranda* rights, removed the packages from the suitcases, and called the District Attorney's Intake Office to discuss obtaining a search warrant for the

packages. A secretary informed Mitchell that everyone was out of the office and that someone would return his call. While waiting for the District Attorney's office to return his call, Ensley stated that he could not believe that a narcotics dog had alerted on his suitcases. Mitchell asked him if he would like to see a dog alert to his bags. Ensley responded that he would like to see a dog alert to his bag. Since Corley had departed the office, Mitchell called a different K–9 officer, R.C. Smith ("Smith"). Smith and his narcotics dog, Daisy, came to the police office. When Daisy came through the office door, she immediately alerted to the large suitcase which had been placed near the door. Smith took Daisy off her lease and she immediately ran to the two small gift wrapped packages and alerted. In fact, Daisy alerted so aggressively to these two packages that she ripped the packages open and sent a plastic bundle from inside the package flying into Ensley's lap before Smith could get her back on a leash. When Daisy was pulled from the packages, Mitchell observed several bundles of marihuana protruding from the ripped packages. At this point in time, Mitchell asked, "Are you satisfied?" to which Ensley responded "Yes."

Mitchell arrested Ensley for the possession of marihuana. The police later found twenty-two bundles of drugs. One of the twenty-two bundles contained cocaine, while the other twenty-one bundles contained marihuana. Before trial, Ensley filed a motion to suppress the evidence seized as a result of the officers' search because the officers lacked reasonable suspicion, probable cause, or a valid warrant or valid consent from the defendant. The trial court granted Ensley's motion.

## STANDARD OF REVIEW

■ In reviewing a trial court's ruling, an appellate court must determine the applicable standard of review. *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). "The amount of deference a reviewing court affords to a trial court's ruling on a 'mixed question of law and fact' (such as the issue of probable cause) often is determined by which judicial actor is in a better position

to decide the issue." *Id.* If the issue involves a witness' credibility and demeanor, compelling reasons exist for allowing the trial court to apply the law to the facts. *See id.* However, if the issue is whether an officer had probable cause, under the totality of the circumstances, the trial judge is not in an appreciably better position than the reviewing court to make that determination. *See id.* "In a recent decision, the United States Supreme Court held that, although great weight should be given to the inferences drawn by the trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." *Id.* (citing *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). The reason for this rule is that " 'probable cause and reasonable suspicion acquire content only through application.' " *Id.*

## DISCUSSION AND HOLDINGS

■ In its sole point of error, the State contends the trial court erred in granting Ensley's motion to suppress. We agree. At the suppression hearing, the trial court ruled

> Well, I believe they had probable cause. I believe those bags contained contraband, had a consensual encounter with the defendant. The defendant consented to opening the luggage, I don't believe he consented to the opening of the gift wrapped packages though. And while I believe all the testimony of the police officers, I think that as a matter of law the opening of the packages even by the dog even though the defendant asked to have the dogs sniff I don't think that that's going to be legal, so I'm granting the Motion to Suppress.

Although the trial court did not think the opening of the gift wrapped packages was permissible, as a matter of law, we think it was. The Texas Court of Criminal Appeals has stated consistently that when a police officer smells marihuana probable cause exists to search for that marihuana. *See Isam v. State,* 582 S.W.2d 441, 444 (Tex.Crim.App. [Panel Op.] 1979); *Luera v. State,* 561 S.W.2d 497, 498 (Tex.Crim.App. [Panel Op.] 1978); *Tardiff v. State,* 548 S.W.2d 380, 382–83 (Tex.Crim.App.1977); *see also Delosreyes v. State,* 853 S.W.2d 684, 688–90 (Tex.App.—Houston [1 st Dist.] 1993, pet. ref'd) (stating that once it was established that the police officers were not trespassing, their detection of the odor of marihuana constituted probable cause); *Chavez v. State,* 769 S.W.2d 284, 287 (Tex.App.—Houston [1 st Dist.] 1989, pet. ref'd) (stating that the odor of an illegal substance can provide an element of probable cause for a search); *Cooper v. State,* 629 S.W.2d 69, 71 (Tex.App.—Dallas 1982) (stating the smell of marihuana supplies probable cause for a police officer to believe that an offense is being committed in his presence and gives the officer probable cause to search for marihuana), *rev'd on other grounds,* 648 S.W.2d 315 (Tex.Crim.App.1983). Thus, even though Mitchell tried to secure a search warrant for the gift wrapped packages, he did not need to obtain one. Once he detected the odor of marihuana emanating from the gift wrapped packages, he had sufficient probable cause to search the packages even without Ensley's consent. *See Isam,* 582 S.W.2d at 444; *Chavez,* 769 S.W.2d at 287. We, therefore, sustain the State's point of error.

Accordingly, we reverse the trial court's suppression of evidence and remand the cause for further proceedings consistent with this opinion.