**STATE of Texas, Appellant,**

v.

**Leo STEELMAN, Appellee.**

State of Texas, Appellant,

v.

Ian Steelman, Appellee.

Nos. 11–99–00155–CR, 11–99–00156–CR.

Court of Appeals of Texas, Eastland.

April 6, 2000.

James Eidson, Crim. Dist. Atty., Abilene, Kollin Shadle, Appellate Section – Criminal Districts Attorney's Office, Abilene, for appellant.

Stan Brown, Abilene, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## OPINION

TERRY McCALL, Justice.

The trial court granted the Steelmans' motions to suppress evidence in their prosecutions for possession of marihuana. The State appeals. See TEX. CODE CRIM. PRO. ANN. art. 44.01(a)(5) (Vernon Pamph. Supp.2000). We affirm.

### Standard of Review

In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Cr. App.1997). Because the trial court is the exclusive finder of fact, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Cr.App.), *cert. den'd*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986). Thus, the trial court's

findings of fact are controlling unless the trial court abused its discretion in making them. *Guzman v. State, supra.* Appellate courts, however, review de novo mixed questions of law and fact, such as reasonable suspicion and probable cause. *Guzman v. State, supra; Davila v. State,* 4 S.W.3d 844, 847 (Tex.App.—Eastland 1999, no pet'n).

■ The Steelmans based their motions to suppress on TEX. CONST. art. I, § 9 only; they did not rely on the federal constitution in the trial court. See U.S. CONST. amends. IV and XIV. Texas courts are not bound by the fourth amendment jurisprudence of the United States Supreme Court when interpreting Article I, section 9. *Heitman v. State,* 815 S.W.2d 681 (Tex.Cr.App.1991). Fourth amendment cases do provide advisory authority, and Texas courts generally follow them in their interpretations of Article I, section 9. *Johnson v. State,* 912 S.W.2d 227, 230 (Tex.Cr.App.1995); *Aitch v. State,* 879 S.W.2d 167, 171–72 (Tex.App.—Houston [14th Dist.] 1994, pet'n ref'd); see, e.g., *Davis v. State,* 829 S.W.2d 218, 221 (Tex. Cr.App.1992). Neither the State nor the Steelmans have advanced any reasons why Article I, section 9 should not be interpreted consistently with the fourth amendment in these cases. Furthermore, we see no reason to make a distinction.

### Background Facts

The trial court entered findings of facts that we will adopt and summarize as the controlling facts of this case. The record supports the trial court's findings of fact, and neither party challenges them. On April 21, 1998, the Abilene Police Department received an anonymous telephone call that drug dealing was taking place at 3141 South 4th Street in Abilene. Officers Lance Vines, Jim Craft, and Jason Aulerich were dispatched to investigate at that location, a single family residence. The officers met down the street from the house and discussed their plan of action. They then proceeded to the house, which did not have a fence, gate, or any other barrier to enter onto the premises. The officers looked into a window and observed four people in the living room of the house. The record indicates that the officers could only see through a small crack in the closed blinds of the front window. Officer Aulerich testified that he could only see "some individuals inside moving around a little bit but couldn't make out exacts."

Officers Vines and Craft went onto the front porch of the house and knocked on the door. Officer Vines testified that he did not announce himself as a police officer out of concern for his safety. Ian Steelman answered the door, stepped outside onto the porch, and closed the door behind him. While the door was open, Officers Vines and Craft smelled the odor of burnt marihuana. The officers asked Ian for his identification. Ian said that he would have to retrieve his identification from the house. He opened the door, stepped inside the house, and began to close the door. Officer Craft put his foot in the door to prevent its closing. Officers Vines and Craft forced their way into the house and drew their weapons. They again smelled the odor of burnt marihuana.

Officer Aulerich also came into the house. Officer Aulerich testified that he could smell the odor of burnt marihuana after he got onto the porch and reached the door. None of the officers saw any marihuana or contraband inside the house. The officers then handcuffed the occupants of the house, including the Steelmans, and read them their rights. The trial court found that the Steelmans were arrested. Leo Steelman refused to give consent to search the house. Officer David Varner, an Abilene Police Department Narcotics Officer, was called to the house. He requested consent to search, and Leo Steelman refused him as well. Officer Varner did not observe any marihuana or other contraband inside the house either.

Officers Varner and Vines left and secured a search warrant. Two and one-half hours later, they returned and executed

the warrant. Prior to the search, none of the officers observed marihuana or contraband in the house. The search revealed several plastic sandwich bags containing marihuana, several marihuana pipes, two "stash boxes," and a handheld scale, among other things. The Steelmans and their two guests were handcuffed and detained in the house until the police completed the search and took them to jail. None of the officers recalled whether they smelled the Steelmans' clothing or hands for the odor of marihuana.

The findings of facts entered by the trial court indicate that the trial court found Officer Craft's testimony to be incredible. Officer Craft's testimony contained several discrepancies from that of Officers Vines and Aulerich. For example, Officer Craft testified that the officers did not meet with each other before going to the Steelmans' house. He also testified that he and Officer Aulerich could see through the window clearly enough to observe the four occupants of the house "smoking. I couldn't tell you what but I watched." Officer Craft testified that, when Ian Steelman opened the door, "smoke came out from behind him along with the odor of burning marihuana." Finally, Officer Craft testified that he saw a marihuana cigarette in plain view in an ashtray on the coffee table in the living room. The trial court, as the exclusive finder of fact, was free to disregard this testimony.

The trial court made two conclusions of law: (1) "An officer may not arrest a person without a warrant unless he observes such person committing an offense" and (2) "Once an officer arrests a person without a warrant or without observing an offense, any evidence obtained should be suppressed." The State argues that the trial court abused its discretion by concluding that the police officers made an unlawful arrest. The State contends that the odor of burnt marihuana gave rise simultaneously to probable cause to arrest and to search for the marihuana.

### Legality of the Arrest

■ An arrest occurs when a person is placed under restraint or is taken into custody by an officer acting with or without a warrant. TEX. CODE CRIM. PRO. ANN. art. 15.22 (Vernon 1977); *Johnson v. State*, 722 S.W.2d 417, 419 (Tex.Cr.App. 1986); see *Guzman v. State, supra* at 86 n. 2. The record shows that the Steelmans and their two friends were handcuffed and detained in their living room from the time the officers entered the house until the officers obtained and executed the search warrant, a period of over two and one-half hours. The trial court found that an arrest occurred. We see no abuse of discretion in that finding.

■ An officer may not make a warrantless arrest unless he has probable cause to suspect an individual and if the arrest falls within one of the exceptions found in TEX. CODE CRIM. PRO. ANN. art. 14 (Vernon 1977 & Supp.2000). *Lunde v. State*, 736 S.W.2d 665, 666 (Tex. Cr.App.1987). One of those exceptions is when the individual commits a crime in the officer's presence. Article 14.01(b). The trial court made three separate findings that, at three different points in time, the officers saw no marihuana or contraband in the house. The record does not indicate that any of the Steelmans or their friends appeared high or intoxicated. Furthermore, the record indicates and the trial court found that the officers only smelled burnt marihuana and not that they saw smoke. Officer Vines testified that smelling like burnt marihuana is not itself a crime. A crime did not occur in the officers' presence; no one possessed marihuana in plain view when the officers entered the house. Cf. *Johnson v. State*, 481 S.W.2d 864 (Tex.Cr.App.1972), where the court held that marihuana smoke and the "high" appearance of the defendant gave police probable cause to arrest him.

■ Another exception to the warrant requirement is when, under the circumstances, the officer reasonably believes

that the individual has committed an offense. Article 14.03(a)(1). Such a belief is the functional equivalent of probable cause which exists:

> "[W]hen the facts and circumstances within an officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not," *a particular suspect* has committed the crime. (Emphasis added)

*Muniz v. State*, 851 S.W.2d 238, 250–251 (Tex.Cr.App.1993), quoting *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The existence of probable cause requires an analysis of the facts of each case. *Guzman v. State, supra* at 90. The appellate court reviews the objective facts known to the officer at the time of the arrest, without regard to the officer's subjective thoughts, in order to determine whether probable cause existed. *Johnson v. State*, 722 S.W.2d *supra* at 419; *Townsley v. State*, 652 S.W.2d 791 (Tex.Cr.App. 1983).

Based on the facts cited above, the officers did not have probable cause to believe that any of the occupants of the house had committed a crime. Furthermore, the officers had no probable cause to believe that any particular suspect had committed a crime. None of the officers could recall whether any of them had sniffed the hands or clothing of the Steelmans or their friends. The warrantless arrests were illegal and violative of Article I, section 9. The trial court's conclusions of law were correct.

1. Another case, *State v. Ensley*, 976 S.W.2d 272 (Tex.App.—Houston [14th Dist.] 1998, pet'n ref'd), involved the search of three wrapped packages found in two suitcases on which a drug dog in the airport alerted. This case involved many more circumstances besides the smell of marihuana, not the least of which was that the smell emanated from a defined area, the packages. Automobiles are more analogous to these packages than are houses.

## Legality of the Entry

The State contends that the smell of burnt marihuana by itself confers probable cause to search without a warrant. The cases which state this proposition involved the search of automobiles.[1] See *Meeks v. State*, 692 S.W.2d 504 (Tex. Cr.App.1985); *Miller v. State*, 608 S.W.2d 684 (Tex.Cr.App.1980); *Luera v. State*, 561 S.W.2d 497 (Tex.Cr.App.1978); *Duff v. State*, 546 S.W.2d 283 (Tex.Cr.App.1977); *Leonard v. State*, 496 S.W.2d 576 (Tex.Cr. App.1973); *Carr v. State*, 904 S.W.2d 882 (Tex.App.—Eastland 1995, pet'n ref'd); *Levine v. State*, 794 S.W.2d 451 (Tex. App.—Amarillo 1990, no pet'n).[2] The police are given greater discretion to perform warrantless searches of automobiles because of their mobile nature. See, e.g., *Chambers v. Maroney* 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The Amarillo court stated the rule involved here in *Levine v. State, supra* at 453:

> Indeed, *probable cause to search a validly stopped vehicle* without a warrant exists when the searching officer, experienced in detecting the odor of marihuana, smells burnt marihuana emanating either from the vehicle itself, or from the person of the driver who has emerged from the vehicle, or from both. (Citations omitted; Emphasis added)

A private dwelling, on the other hand, is a sacrosanct place in search and seizure law. TEX. CONST. art. I, § 9 specifically names people's houses as a place in which they are entitled to feel

2. Some of these cases involve more circumstances than the mere smell of marihuana to give the officers probable cause to search, but we need not discuss that distinction in this case. Some cases, including at least one cited by the State, stand for the proposition that the smell of marihuana gives "reasonable suspicion" to detain or to investigate. See *Isam v. State*, 582 S.W.2d 441 (Tex.Cr.App.1979); *Tardiff v. State*, 548 S.W.2d 380 (Tex.Cr.App. 1977).

secure from governmental intrusion. See also U.S. CONST. amend. IV. Private dwellings cannot be easily removed from the jurisdiction. Unlike the automobile exception to the warrant requirement, a warrantless search of a house under the fourth amendment requires not only probable cause but also the existence of exigent circumstances such as the threat of the imminent destruction of evidence. *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). The Supreme Court in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), held that the fourth amendment protects people in places where they have a subjective expectation of privacy that is objectively reasonable. A house is nearly always one of those places where people have that expectation. See *Rodriguez v. State,* 653 S.W.2d 305, 307 (Tex.Cr.App. 1983). The Steelmans apparently had expectations of privacy because the record shows that their window blinds were shut. To see inside, Officer Aulerich had to look through a small crack between two slats. Also, Ian Steelman shut the door behind him when he stepped onto the porch. We see no reason that the rationale of *Katz* would not apply to Article I, section 9.

■■■ The Court of Criminal Appeals has recently held that Article I, section 9, does not require a warrant for searches and seizures. *Hulit v. State,* 982 S.W.2d 431, 436 (Tex.Cr.App.1998). The critical inquiry under Article I, section 9, is whether the search or seizure was reasonable. *Hulit v. State, supra.* The issuance of a warrant by a neutral magistrate, however, can be a factor in the totality of the circumstances that determine whether a search is reasonable. *Hulit v. State, supra.* Thus, the warrantless entry into the Steelmans' house, although nearly always unreasonable and illegal per se under the fourth amendment, might withstand scrutiny under Article I, section 9.

The United States Supreme Court addressed a similar situation in *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In *Johnson,* a confidential informant informed the police that opium was being used by "unknown persons" in the Europe Hotel. When they arrived at the hotel to further investigate, the police smelled the "distinctive and unmistakable" odor of burning opium coming from a certain room. They did not know the occupants of the room, so they knocked and announced their presence. The defendant then opened the door, and the police asked for admittance. A search of the room revealed opium and a smoking apparatus. Mr. Justice Jackson wrote for the Court:

At the time entry was demanded the officers were possessed of evidence which a magistrate might have found to be probable cause for issuing a search warrant. . . . If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. . . .

The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. . . . Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a police-

man or Government enforcement agent. (Footnote omitted)

*Johnson v. United States*, 333 U.S. *supra* at 13–14, 68 S.Ct. 367.

 Although the Court in *Johnson v. United States* spoke only to requirements of the fourth amendment and although Article I, section 9, contains no absolute requirement for a warrant, the reasoning in *Johnson v. United States* is extremely persuasive. Besides an untested and uncorroborated anonymous tip,[3] the officers had nothing but the odor of burnt marihuana to give them probable cause to search. The mere odor of burnt marihuana, without smoke or some other evidence of current or recent possession, does not necessarily lead to the conclusion that an occupant of a house possesses marihuana. Indeed, the person who smoked the marihuana may have left, taking his drugs with him. Even if the smell of burnt marihuana by itself can furnish probable cause to search, that determination is one that should be made by a detached, neutral magistrate.[4] The status of the home in search and seizure law requires us to hold that the warrantless entry and search of the home was unreasonable under Article I, section 9.

### Attenuation of the Taint

 The inquiry does not end, however, with whether the warrantless

arrest of the Steelmans and the warrantless entry into and search of their house were illegal. The State argues that the subsequent search warrant attenuated any taint from the illegality. The attenuation doctrine applies in Texas, not as an exception to the exclusionary rule of TEX. CODE CRIM. PRO. ANN. art. 38.23 (Vernon Pamph. Supp.2000)[5] but as a method of determining whether evidence was obtained illegally. *Johnson v. State*, 871 S.W.2d 744, 751 (Tex.Cr.App. 1994). An intervening circumstance, such as obtaining an arrest or search warrant, can serve to attenuate the taint of any original illegality. *Johnson v. State*, 871 S.W.2d *supra*.[6] If the suppressed evidence was obtained through a legal search of the premises, the trial court erred.

The officers entered the house and handcuffed the Steelmans and their friends. An arrest and a search occurred. Officers Craft and Aulerich stayed at the house and guarded the handcuffed occupants while Officers Vines and Varner secured a search warrant. The illegal warrantless search never ended because the officers remained in the house. The issuance of the search warrant did not stop the illegal search and begin a new search. Thus, we hold that the issuance of the search warrant did not attenuate the taint from the illegal search and arrest.

3. Any hearsay information used to support a warrant must be shown to be credible or reliable. *Winkles v. State*, 634 S.W.2d 289, 292 (Tex.Cr.App.1981). Officer Vines testified that he did not know who the informant was. The officers observed nothing except the smell of burnt marihuana that tended to corroborate the anonymous tip. Under the facts, the tip alone would not furnish even reasonable suspicion to the officers. *Ebarb v. State*, 598 S.W.2d 842, 845 (Tex.Cr.App.1979). We need not express an opinion whether the anonymous tip plus the odor of burnt marihuana could furnish probable cause for the warrant.

4. The fact that we have held that a determination of whether the odor of burnt marihuana furnishes probable cause for a search warrant

is best made by a neutral magistrate means that we need not decide whether exigent circumstances exist that would normally allow a warrantless search of the premises.

5. Article 38.23(a) states that:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

6. The Court of Criminal Appeals recently held that a suspect's consent could serve to attenuate the taint of an illegal entry into a home. *Reasor v. State*, 12 S.W.3d 813 (Tex.Cr.App. 2000)(not yet reported).

*This Court's Ruling*

We overrule the State's issue for review. The trial court properly suppressed the evidence. Article 38.23. The order granting the motion to suppress is affirmed.