11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

John Banton Radford

Appellant

Vs.                   No.  11-01-00077-CR C Appeal from Taylor County

State of Texas

Appellee

 

Upon his
plea of guilty, the trial court convicted appellant of possession of
methamphetamine and assessed his punishment at confinement for two years in a
state jail facility.  We reverse and
remand.

In two
points of error, appellant argues that the trial court erred in denying his
motion to suppress evidence seized from his home.  In reviewing a trial court's ruling on a motion to suppress,
appellate courts must give great deference to the trial court's findings of
historical facts as long as the record supports the findings.  Guzman v. State, 955 S.W.2d 85
(Tex.Cr.App.1997).  We must afford the
same amount of deference to the trial court=s rulings on Amixed
questions of law and fact,@ such as the issue of probable cause, if the resolution of those
ultimate questions turns on an evaluation of credibility and demeanor.  Guzman v. State, supra at 89.  Appellate courts, however, review de novo Amixed questions of law and fact@ not falling within the previous
category.   Guzman v. State, supra.  When faced with a mixed question of law and
fact, the critical question under Guzman is whether the ruling
"turns" on an evaluation of credibility and demeanor.  Loserth v. State, 963 S.W.2d 770, 773
(Tex.Cr.App.1998).  A question
"turns" on an evaluation of credibility and demeanor when the
testimony of one or more witnesses, if believed, is always enough to add up to
what is needed to decide the substantive issue.  Loserth v. State, supra.  We
must view the record in the light most favorable to the trial court=s ruling and sustain the trial court=s ruling if it is reasonably correct on any
theory of law applicable to the case. 
Guzman v. State, supra.  








At the
hearing on the motion to suppress, Officer Mike Hobbs with the Special
Operations Division of the Abilene Police Department testified that on April
13, 2000, he received a call from the dispatcher concerning an anonymous call Aabout people shooting up narcotics inside 502
Santos.@ 
Officer Hobbs and a patrol officer, Adam Lopez, parked a few houses down
from the residence at 502 Santos and went to Ago up and walk and check this house out.@  Officer Hobbs testified that
he had been to that residence before Alooking for transients, wanted people, people supposedly using drugs,
but the house had always been boarded up.@

Officer
Hobbs testified that he approached the house on foot to investigate and that
the front door and south side of the house were boarded up.  Officer Hobbs stated that a window on the
east side was open and that there was a Agap@ between the edge of the window and the
drape.  Officer Hobbs Ashined a light there and was looking,@ and he could Abarely see some people huddled up in what appeared to be [a] corner of
the room.@ 
Officer Hobbs testified that, as he was looking through the window, he
saw someone run toward the south side of the house.  Officer Hobbs called to Officer Lopez, and they went around the
house and found a door that was functional. 
Officer Hobbs knocked on the door, and appellant opened the door.

Officer
Hobbs testified that he smelled the Aodor of burning marijuana@ when appellant opened the door. 
He described the odor as freshly-burned marihuana and estimated that it
had been burned Awithin the last 45 minutes or so at least.@ 
Officer Hobbs entered the residence upon smelling the odor of marihuana
and made contact with the people in the house. 
Because he had seen someone run through the back side of the house,
Officer Hobbs searched the back part of the house for the officers= safety. 
Officer Hobbs did not find anyone on the first search but later found a
girl hiding in the closet. 

Officer
Hobbs further testified that he asked appellant for consent to search the
residence, and appellant refused. 
Officer Hobbs then advised everyone of their rights, secured the
residence, called other officers to come to the scene, and then left to make an
application for a search warrant. 
Officer Hobbs testified that no controlled substances were found prior
to the execution of the search warrant.








            At
the hearing on appellant=s motion to suppress, Officer Lopez testified that he assisted Officer
Hobbs on the call of suspected drug use at 502 Santos.  Officer Lopez stated that, when he went
around the house, he could not tell if the house was occupied and that he
shined his flashlight into the windows because they were boarded up.   Officer Lopez heard Officer Hobbs
yell:  APolice officer@; and
Officer Lopez went to the front of the house. 
He went with Officer Hobbs, who knocked on the side door that was functional.  Officer Lopez stated that he smelled the
odor of marihuana when appellant opened the door.  Officer Lopez stated that it smelled like Apreviously-burned marijuana.@ 
Officer Lopez testified that he entered the residence with Officer Hobbs
and that they got everyone in the kitchen. 
They then Adid a
check of the house@ to
find the subject who had run.  Officer
Lopez stated that he stayed with appellant, who was under arrest, in the
kitchen while Officer Hobbs went for a search warrant and that the house was
not searched until Officer Hobbs returned with the search warrant.  

Appellant
called Candace Marie Satterwhite to testify at the hearing on his motion to
suppress.  Candace said that she had
been at appellant=s
house all day on the day of the offense and that her husband, Bobby
Satterwhite, and two others were also at the house.  She testified that they were all sitting in the Akitchen-living room@ when the police Abanged@ on the window with their flashlights and then came to the front
door.  Candace testified that her
husband left through the window before the police entered the residence.  Candace stated that another female present
at the house ran to the back room when the police hit on the window and that
the police came in, handcuffed everyone, advised them of their rights, and had
them sit on the couch. Candace further testified that, while no one had smoked
marihuana in the house all day, she had used drugs earlier that day.

The State
argues on appeal that appellant does not have standing to challenge the search
of the residence or the seizure of the methamphetamine.  Appellant, by bringing a motion to suppress,
bears the burden of establishing all of the elements of a Fourth Amendment
claim.  Rawlings v. Kentucky, 448 U.S.
98 (1980); State v. Klima, 934 S.W.2d 109 (Tex.Cr.App.1996).  The State challenged appellant=s motion to suppress, but not on the issue of
appellant=s standing. 
The State may raise the issue of standing for the first time on appeal.
State v. Klima, supra.  The record,
however, does not support the State=s argument that appellant lacked standing to challenge the search of
the residence and the seizure of methamphetamine.








In his motion
to suppress evidence, appellant seeks to suppress evidence Aseized from or about his person or from his
residence.@ 
Officer Hobbs=
affidavit in support of the search warrant states:  AJohn Radford advised me he was the owner of
the residence.@   At the
hearing on appellant=s
motion to suppress, in response to a question on whether there was any evidence
that appellant possessed narcotics, Officer Lopez testified:  AIt was his residence, yes, it was found in his residence.@ 
Candace= testimony also indicates that the residence
belonged to appellant.  The record
reveals that appellant was the owner of the residence and was, therefore,
entitled to challenge the search of the residence.  Additionally, the record does not support the State=s argument that the methamphetamine was
seized from the person of ACandace Satterwhite.@  

The State
also argues that the officers= smelling of burned marihuana provided probable cause for the search
warrant; however, that is not the issue. 
The issue is whether the mere smell of burned marihuana provides
justification for officers barging into homes, arresting the homeowner, and
then obtaining a search warrant.[1]  

Appellant
argues that the trial court erred in denying his motion to suppress because A[t]he search was the result of an unlawful
arrest based solely on the smell of burned marijuana@ and because A[t]he search warrant issued to search [his] home was not based upon
probable cause.@ Because the trial court=s ruling does not turn on an evaluation of
credibility and demeanor, we review the trial court=s ruling de novo.  Guzman v. State, supra.








The facts
in the case before us are similar to those in State v. Steelman, 16 S.W.3d 483
(Tex.App. - Eastland 2000, pet=n granted). The record before us indicates that the police entered the
residence upon smelling the odor of freshly-burned marihuana and that the
occupants were placed under arrest and detained in the house for about an hour
and a half while Officer Hobbs secured a search warrant.  Officer Hobbs testified that he did not find
any marihuana in the house, that he did not see any smoke, and that no one in
the house smelled of marihuana.  Officer
Hobbs stated that the girls in the house appeared to be Aunder the influence of some type of an
intoxicant@ but that appellant did not appear to be
under the influence of marihuana. 
Johnson v. State, 481 S.W.2d 864 (Tex.Cr.App.1972)(where the court held
that marihuana smoke and the Ahigh@ appearance of the defendant gave police
probable cause to arrest him). Officer Hobbs testified that the occupants of
the house were all placed under arrest based upon the smell of marihuana.  We find that appellant was illegally
arrested.  State v. Steelman, supra.
Appellant=s first point of error is sustained.  Because we sustain appellant=s first point of error, we need not address
his remaining point of error. 
TEX.R.APP.P. 47.1.  

The
judgment of the trial court is reversed, and the cause is remanded.

 

TERRY
McCALL

JUSTICE

 

September 13, 2001

Publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.

 

[1]Instead of arresting everyone, an officer could keep a
house under surveillance while another officer obtains a search warrant.

 











[1]Instead of arresting everyone, an officer could keep a
house under surveillance while another officer obtains a search warrant.