John Banton **RADFORD**, Appellant,

v.

**STATE of Texas, Appellee.**

No. 11–01–00077–CR.

Court of Appeals of Texas, Eastland.

Sept. 13, 2001.

Rehearing Overruled Oct. 11, 2001.

Shane Deel, Abilene, for appellant.

Kollin Shadle, Appellate Section, Criminal Dist. Attys. Office, James Eidson, Criminal Dist. Atty., Abilene, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## Opinion

McCALL, Justice.

Upon his plea of guilty, the trial court convicted appellant of possession of methamphetamine and assessed his punishment at confinement for two years in a state jail facility. We reverse and remand.

In two points of error, appellant argues that the trial court erred in denying his motion to suppress evidence seized from his home. In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85 (Tex.Cr.App.1997). We must afford the same amount of deference to the trial court's rulings on "mixed questions of law and fact," such as the issue of probable cause, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman v. State*, supra at 89. Appellate courts, however, review de novo "mixed questions of law and fact" not falling within the previous category. *Guzman v. State*, supra. When faced with a mixed question of law and fact, the critical question under *Guzman* is whether the ruling "turns" on an evaluation of credibility and demeanor. *Loserth v. State*, 963 S.W.2d 770, 773 (Tex.Cr.App. 1998). A question "turns" on an evaluation of credibility and demeanor when the testimony of one or more witnesses, if believed, is always enough to add up to what is needed to decide the substantive issue. *Loserth v. State*, supra. We must view the record in the light most favorable to the trial court's ruling and sustain the trial court's ruling if it is reasonably correct on any theory of law applicable to the case. *Guzman v. State*, supra.

At the hearing on the motion to suppress, Officer Mike Hobbs with the Special Operations Division of the Abilene Police Department testified that on April 13, 2000, he received a call from the dispatcher concerning an anonymous call "about people shooting up narcotics inside 502 Santos." Officer Hobbs and a patrol officer, Adam Lopez, parked a few houses down from the residence at 502 Santos and went to "go up and walk and check this house out." Officer Hobbs testified that he had been to that residence before "looking for transients, wanted people, people supposedly using drugs, but the house had always been boarded up."

Officer Hobbs testified that he approached the house on foot to investigate and that the front door and south side of the house were boarded up. Officer Hobbs stated that a window on the east side was open and that there was a "gap" between the edge of the window and the drape. Officer Hobbs "shined a light there and was looking," and he could "barely see some people huddled up in what appeared to be [a] corner of the room." Officer Hobbs testified that, as he was looking through the window, he saw someone run toward the south side of the house. Officer Hobbs called to Officer Lopez, and they went around the house and found a door that was functional. Officer Hobbs knocked on the door, and appellant opened the door.

Officer Hobbs testified that he smelled the "odor of burning marijuana" when appellant opened the door. He described the odor as freshly-burned marihuana and estimated that it had been burned "within the last 45 minutes or so at least." Officer Hobbs entered the residence upon smelling the odor of marihuana and made contact with the people in the house. Because he had seen someone run through the back side of the house, Officer Hobbs searched the back part of the house for the officers' safety. Officer Hobbs did not find anyone on the first search but later found a girl hiding in the closet.

Officer Hobbs further testified that he asked appellant for consent to search the residence, and appellant refused. Officer Hobbs then advised everyone of their rights, secured the residence, called other officers to come to the scene, and then left to make an application for a search warrant. Officer Hobbs testified that no controlled substances were found prior to the execution of the search warrant.

At the hearing on appellant's motion to suppress, Officer Lopez testified that he assisted Officer Hobbs on the call of suspected drug use at 502 Santos. Officer Lopez stated that, when he went around the house, he could not tell if the house was occupied and that he shined his flashlight into the windows because they were boarded up. Officer Lopez heard Officer Hobbs yell: "Police officer"; and Officer Lopez went to the front of the house. He went with Officer Hobbs, who knocked on the side door that was functional. Officer Lopez stated that he smelled the odor of marihuana when appellant opened the door. Officer Lopez stated that it smelled like "previously-burned marijuana." Officer Lopez testified that he entered the residence with Officer Hobbs and that they got everyone in the kitchen. They then "did a check of the house" to find the sub-

ject who had run. Officer Lopez stated that he stayed with appellant, who was under arrest, in the kitchen while Officer Hobbs went for a search warrant and that the house was not searched until Officer Hobbs returned with the search warrant.

Appellant called Candace Marie Satterwhite to testify at the hearing on his motion to suppress. Candace said that she had been at appellant's house all day on the day of the offense and that her husband, Bobby Satterwhite, and two others were also at the house. She testified that they were all sitting in the "kitchen-living room" when the police "banged" on the window with their flashlights and then came to the front door. Candace testified that her husband left through the window before the police entered the residence. Candace stated that another female present at the house ran to the back room when the police hit on the window and that the police came in, handcuffed everyone, advised them of their rights, and had them sit on the couch. Candace further testified that, while no one had smoked marihuana in the house all day, she had used drugs earlier that day.

■ The State argues on appeal that appellant does not have standing to challenge the search of the residence or the seizure of the methamphetamine. Appellant, by bringing a motion to suppress, bears the burden of establishing all of the elements of a Fourth Amendment claim. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *State v. Klima*, 934 S.W.2d 109 (Tex.Cr.App.1996). The State challenged appellant's motion to suppress, but not on the issue of appellant's standing. The State may raise the issue of standing for the first time on appeal. *State v. Klima, supra*. The record, however, does not support the State's argument that appellant lacked standing to

challenge the search of the residence and the seizure of methamphetamine.

■ In his motion to suppress evidence, appellant seeks to suppress evidence "seized from or about his person or from his residence." Officer Hobbs' affidavit in support of the search warrant states: "John Radford advised me he was the owner of the residence." At the hearing on appellant's motion to suppress, in response to a question on whether there was any evidence that appellant possessed narcotics, Officer Lopez testified: "It was his residence, yes, it was found in his residence." Candace' testimony also indicates that the residence belonged to appellant. The record reveals that appellant was the owner of the residence and was, therefore, entitled to challenge the search of the residence. Additionally, the record does not support the State's argument that the methamphetamine was seized from the person of "Candace Satterwhite."

■ The State also argues that the officers' smelling of burned marihuana provided probable cause for the search warrant; however, that is not the issue. The issue is whether the mere smell of burned marihuana provides justification for officers barging into homes, arresting the homeowner, and then obtaining a search warrant.[1]

Appellant argues that the trial court erred in denying his motion to suppress because "[t]he search was the result of an unlawful arrest based solely on the smell of burned marijuana" and because "[t]he search warrant issued to search [his] home was not based upon probable cause." Because the trial court's ruling does not turn on an evaluation of credibility and demean-

or, we review the trial court's ruling de novo. *Guzman v. State*, supra.

The facts in the case before us are similar to those in *State v. Steelman*, 16 S.W.3d 483 (Tex.App.—Eastland 2000, pet'n granted). The record before us indicates that the police entered the residence upon smelling the odor of freshly-burned marihuana and that the occupants were placed under arrest and detained in the house for about an hour and a half while Officer Hobbs secured a search warrant. Officer Hobbs testified that he did not find any marihuana in the house, that he did not see any smoke, and that no one in the house smelled of marihuana. Officer Hobbs stated that the girls in the house appeared to be "under the influence of some type of an intoxicant" but that appellant did not appear to be under the influence of marihuana. *Johnson v. State*, 481 S.W.2d 864 (Tex.Cr.App.1972), where the court held that marihuana smoke and the "high" appearance of the defendant gave police probable cause to arrest him. Officer Hobbs testified that the occupants of the house were all placed under arrest based upon the smell of marihuana. We find that appellant was illegally arrested. *State v. Steelman*, supra. Appellant's first point of error is sustained. Because we sustain appellant's first point of error, we need not address his remaining point of error. Tex.R.App.P. 47.1.

The judgment of the trial court is reversed, and the cause is remanded.

---

1. Instead of arresting everyone, an officer could keep a house under surveillance while another officer obtains a search warrant.