**The STATE of Texas, Appellant,**

v.

**Robby D. WASHINGTON, Appellee.**

No. 12–96–00161–CR.

Court of Appeals of Texas, Tyler.

April 29, 1997.

Edward J. Marty, Tyler, for appellant.

Clifton L. Roberson, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

PER CURIAM.

Pursuant to TEX.CODE CRIM.PROC. art. 44.01(a)(5), the State appeals the granting of Appellee's motion to suppress evidence. Appellee was stopped by police for a traffic violation and was given a warning ticket. The officer then requested the right to search Appellee's vehicle and Appellee consented. The search yielded approximately two ounces of marijuana in a brown paper bag. After a hearing on suppression of evi-

dence, the trial court granted Appellee's motion and ruled the evidence inadmissible. We will reverse and remand.

■ In its sole point of error, the State contends that the trial court abused its discretion by suppressing the marijuana because it was contraband found incident to a valid consent search. Appellee responds by claiming that, once the officer gave Appellee the warning ticket, there was no longer lawful detention and, subsequent to that time, the officer did not have probable cause to search the automobile. When reviewing a ruling on a motion to suppress, an appellate court must view the evidence in the light most favorable to the trial court's ruling. *State v. Brown*, 929 S.W.2d 588, 591 (Tex. App.—Corpus Christi 1996, no pet.); *State v. Mireles*, 904 S.W.2d 885, 887 (Tex.App.—Corpus Christi 1995, pet. ref'd). Because the trial court granted Appellee's motion to suppress, we must view the evidence in his favor. If we determine that the trial court was correct on any theory raised in the trial court, we will uphold the trial court's order. *Brown*, at 588; *State v. Brady*, 763 S.W.2d 38, 40 (Tex.App.—Corpus Christi 1988, no pet.). Absent a clear abuse of discretion, the ruling on the admissibility of evidence will not be disturbed. *Mireles*, at 887.

The relevant facts that were uncontested are as follows: On or about March 17, 1995, Officer Kreger of the Tyler Police Department was patrolling a known drug house when he observed Appellee entering the building at 3:01 a.m. Approximately four minutes later, he then observed Appellee leaving. Almost immediately thereafter, Kreger stopped Appellee and cited him for failing to give a signal within 100 feet of an intersection and was issued a warning ticket. After issuing the warning, the officer asked Appellee if he would agree to a search of his vehicle. Appellee agreed, and the search resulted in the discovery of marijuana in a brown paper sack beneath the car seat. Kreger justified the search by explaining during the hearing that he had "suspicion that [Appellee] was involved in drug activity" because he was seen entering and departing from the "known drug house." Kreger also testified that "I told him that I was looking for contraband, drugs, and weapons, and what have you in the neighborhood," and that he had shown Appellee a consent form and explained it to him prior to search. Kreger stated that Appellee offered no resistance at all and said "to go ahead and take a look."

The State contends that the trial court abused its discretion in suppressing the marijuana found during the search of Appellee's car. It argues that the search was a valid consent search and the contraband was found incident to that legal search. The State also asserts that its case should not be decided under *Sedani v. State*, 848 S.W.2d 314 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd), upon which the Appellee relies. Like the Appellee in the present case, the defendant in *Sedani* was also stopped for a traffic violation and was subsequently charged with having contraband in his vehicle. The Court of Appeals in *Sedani* reversed and remanded that case, holding that *Sedani* was illegally detained after he had received his copies of the traffic citation (which he subsequently tore up while the officer was present). The court determined that the officer had a mandatory obligation to release Sedani and therefore had no probable cause to hold him after he signed the promise to appear. Because the arrest was illegal, the contraband discovered as a search subsequent to his arrest was determined to be illegal also.

We conclude from our review of *Sedani*, however, that the traffic violation and the discovery of contraband are the only significant similarities to the present case. Appellee in the instant case was only given a warning citation, whereas in *Sedani* the defendant was hostile after being ticketed and had to be arrested. Moreover, in *Sedani*, the defendant's car was subject to an inventory search incident to arrest, and in the instant case, the Appellee consented to having his car searched. Thus, we conclude that the *Sedani* is factually distinguishable from the instant case and therefore inapplicable.

We instead rely upon a recent Supreme Court decision, *Ohio v. Robinette*, —— U.S. ——, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). In *Robinette*, the defendant was stopped for speeding, was issued a verbal warning, and had his driver's license returned to him by

the police officer. At that point, the officer asked Robinette whether he was carrying any illegal contraband in his car and he replied in the negative. The officer asked if he could search Robinette's car and he consented. The officer found marijuana and a pill that was later determined to be contraband. *Id.* at ——, 117 S.Ct. at 419. Prior to trial, Robinette unsuccessfully attempted to suppress the evidence, pleaded "no contest," and was found guilty. The issue on appeal was whether the search resulted from an unlawful detention. In affirming the Ohio Court of Appeals' reversal of Robinette's conviction, the Ohio Supreme Court established a bright-line prerequisite for consensual interrogation. It required the officer, prior to any attempt to engage in a consensual interrogation, to use the phrase, "At this time you legally are free to go" or words of similar import. *Robinette* at —— – ——, 117 S.Ct. at 419–420.

The Supreme Court rejected this holding and reversed the Ohio Supreme Court. Citing its decision in *Whren v. United States,* 517 U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the Court determined that "the subjective intentions of the officer did not make the continued detention of respondent illegal under the Fourth Amendment." *Robinette,* —— U.S. at ——, 117 S.Ct. at 420, citing *Whren,* —— U.S. at ——, 116 S.Ct. at 1774. *See also State v. Vasquez,* 937 S.W.2d 572 (Tex.App.—San Antonio 1996, no pet.). The *Robinette* Court continued by reiterating its conclusion in *Whren* that " 'the fact that [an] officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.' ... Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Robinette* at ——, 117 S.Ct. at 421, citing *Whren* at ——, 116 S.Ct. at 1774.

Addressing the merits of the issue, the *Robinette* Court discussed the "reasonableness" requirement of the Fourth Amendment and stated that reasonableness is measured in objective terms by examining the totality of the circumstances. *Robinette* at ——, 117

S.Ct. at 421. It rejected the bright-line rule and emphasized the fact-specific nature of the reasonableness inquiry. It also stated that it had previously rejected a similar *per se* rule in determining the validity of a consent to search in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), which is also cited by the State in the present case. The *Robinette* Court noted that, in *Schneckloth,* it was argued that such a consent could not be valid unless the defendant knew that he had a right to refuse the request. In *Robinette,* the Supreme Court noted that it had rejected this argument. Quoting the following from *Schneckloth,* it again noted: "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." *Robinette,* at ——, 117 S.Ct. at 421. The Court reaffirmed its holding in *Schneckloth* that "just as it would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning, ... too would it be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary." *Id.* Finally, the *Robinette* court held that the Fourth Amendment test for a valid consent to search is that the consent be voluntary, and "[v]oluntariness is a question of fact to be determined from all the circumstances." *Id.; see also Ester v. State,* 941 S.W.2d 297 (Tex.App.—Tyler 1996, no pet.).

 Viewing the record under *Robinette,* we find no controverting evidence or testimony to refute the State's claim that Appellee consented to the police search of his vehicle. Thus, the evidence having established the voluntariness of Appellee's consent, we conclude that the trial court abused its discretion in granting Appellee's motion to suppress. The State's point of error is therefore sustained. The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.