Reversed and Remanded and Plurality and Dissenting Opinions filed June
19, 2003


















Reversed and
Remanded and Plurality and Dissenting Opinions filed June 19, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00944-CR

____________

 

XAVIER HERNANDEZ BAROCIO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

___________________________________________________

 

On Appeal from
the County Criminal Court at Law No. 11

Harris County, Texas

Trial Court
Cause No. 1050094

 

___________________________________________________

 

P L U R A L
I T Y   O P I N I O N

            Following the denial of his motion
to suppress, appellant Xavier Hernandez Barocio
pleaded no contest to possession of marijuana. 
He contends on appeal that the trial court should have suppressed the
marijuana because police discovered it after entering his home without a
warrant.  We find that the trial court
should have suppressed the marijuana. 
Accordingly, we reverse and remand.




 








                                                               Background

            While on patrol, Harris County
Deputy Wyatt noticed a car parked on the road, facing the wrong direction, with
its driver’s door open, and the keys in the ignition.  He and Deputy Kirsch approached the home nearest
the car to investigate.  As they
approached the front porch, they saw pry marks on the front door and a
surveillance camera aimed at the front door. 


            Deputy Wyatt testified that they
knocked and waited several minutes before Barocio
answered.  He testified that he could
smell burnt marijuana as he stood outside the door.  According to Deputy Wyatt, when Barocio opened the door, the marijuana odor became
stronger.  They asked for identification,
but Barocio refused to provide it.  Thus, Deputy Wyatt testified that he detained
Barocio on the porch while Deputy Kirsch entered the
home to conduct a protective sweep and investigate the odor of marijuana.  Deputy Wyatt further testified that when they
asked for identification, they were investigating only the odor of marijuana.

            Deputy Kirsch’s version differed in
some respects to Deputy Wyatt’s testimony. 
He testified that he first smelled marijuana when Barocio
opened the door.  Deputy Kirsch stated
that he told Barocio to step outside and asked for
his identification.  Barocio
indicated that his identification was inside the home.  Deputy Kirsch testified that he then
instructed Barocio to retrieve the
identification.  According to Deputy
Kirsch, when Barocio entered the home, he and Deputy
Wyatt followed without consent.  Once
inside, Deputy Kirsch could see a bag of marijuana lying on the kitchen
counter.  At that point, Deputy Kirsch
conducted a protective sweep of the remainder of the home.  He testified that “the principle reason” he
entered the home “was the strong odor of burning marijuana inside.”  The “secondary reason” was to obtain
identification in connection with his suspicion that Barocio
was a burglar.

            Finally, Barocio
testified that the deputies asked him to step outside to see his driver’s
license and insurance card.  As he
stepped onto the porch, he closed the front door behind him.  He testified that Deputy Kirsch nonetheless
entered the home without permission. 
When Barocio protested and grabbed his
cellular telephone to call his lawyer, Deputy Wyatt took away the telephone and
handcuffed him.  He further testified
that he never entered his home with the officers.  Barocio admitted
that the marijuana was lying on the kitchen counter, but testified that it was
not visible from the front door.  Barocio further admitted that he had smoked some of the
marijuana the night before.

            After discovering the bag of
marijuana in the kitchen, the deputies obtained a search warrant through Deputy
Kevin Montford. 
Because of statements by Deputy Wyatt, Deputy Montford
averred that the officers first saw the marijuana in plain view while standing
outside the home.  However, this line of
sight was later proved impossible, and Deputy Wyatt testified at trial that he
did not see the marijuana until after the search warrant was issued.  Further, Deputy Wyatt testified that it was
Deputy Kirsch who provided the information about the bag of marijuana to Deputy
Montford for the search warrant. 

                                                       Standard
of Review

            We review a trial court’s ruling on
a motion to suppress for abuse of discretion. 
Alvarado v. State, 853 S.W.2d
17, 23 (Tex. Crim. App. 1993).  Accordingly, we give great deference to the
trial court’s determination of historical facts supported by the record.  Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1991).  We afford the same amount of
deference to the trial court’s rulings on “mixed questions of law and fact,”
such as the issue of probable cause, if the resolution of those ultimate
questions turns on evaluation of witnesses’ credibility and demeanor.  Id.  If a mixed question of law and fact does not turn on an evaluation of credibility
and demeanor, we review the ruling de novo. 
Id.  Thus, “[w]hen faced with an issue of  mixed law and fact, the critical question
under Guzman is whether it ‘turns’ on
an evaluation of credibility and demeanor.” 
Loserth v. State, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998).  A
question “turns” on an evaluation of credibility and demeanor where the
testimony of one or more witnesses, if believed, is enough to establish what is
needed to decide the substantive issue.  Id.

            The decision in this case does not
turn on the credibility and demeanor of the witnesses because the testimony,
even if entirely believed, is insufficient to justify the warrantless
entry into appellant’s home.  Therefore,
we review the trial court’s ruling de novo.

                                                      Warrantless Search

            The Fourth Amendment of the United
States Constitution and article I, section 9 of the Texas Constitution forbid
unreasonable searches and seizures. 
“‘(P)hysical entry of the home is the chief
evil against which the wording of the Fourth Amendment is directed.’”  Spring
v. State, 626 S.W.2d 37, 41 (Tex. Crim. App.
1981) (quoting United States v. United States Dist. Court for E. Dist. Of Mich., 407 U.S. 297, 313
(1972)); see State v. Steelman,
16 S.W.3d 483, 488 (Tex. App.—Eastland 2000), aff’d, 93 S.W.3d 102 (Tex. Crim. App. 2002) (a private dwelling is a sacrosanct place
in search and seizure law).  Thus, the
Fourth Amendment draws a firm line at the entrance to the house.  Green
v. State, 78 S.W.3d 604, 608–09 (Tex. App.—Fort
Worth 2002, no pet.) (citing Payton v. New York, 445 U.S. 573, 590
(1980)).  No evidence obtained in an
unreasonable search and seizure may be admitted at trial.  See
Tex. Code Crim.
Proc. Ann. art. 38.23(a) (Vernon Pamph. 2003).  A warrantless search is per
se unreasonable, subject to a few specifically established exceptions.  Reasor v. State,
12 S.W.3d 813, 817 (Tex. Crim. App. 2000). 
These exceptions are “jealously and carefully drawn.”  Coolidge
v. New
 Hampshire, 403 U.S. 443, 468
(1971); Jones v. United States, 357 U.S. 493, 497
(1958).

            One such exception is a search
conducted with probable cause and exigent circumstances, which make obtaining a
warrant impracticable.  McNairy v. State, 835 S.W.2d 101, 106
(Tex. Crim. App. 1991).  “Probable cause to search exists when
reasonably trustworthy facts and circumstances within the knowledge of the
officer on the scene would lead a man of reasonable prudence to believe that
the instrumentality of a crime or evidence of a crime will be found.”  Id.  On appellate review, a warrantless
search based on probable cause may require evidence of a more “judicially
competent or persuasive character” than a search based upon a magistrate’s
determination of probable cause.  Aguilar v. Texas, 378 U.S. 108, 111
(1964), abrogated on other grounds by Illinois v. Gates, 462 U.S. 213 (1983).  Thus, facts which might constitute issuance
of a warrant for probable cause do not necessarily validate a search made without
a warrant.  Id.  “Any assumption that evidence sufficient to
support a magistrate’s disinterested determination to issue a search warrant
will justify the officers in making a search without a warrant would reduce the
[Fourth] Amendment to a nullity and leave the people’s homes secure only in the
discretion of police officers.”  Johnson v. United States, 333 U.S. 10, 13–14
(1948) (holding that odor of burning opium did not excuse necessity of
obtaining a warrant to search).[1]

            In keeping with this rationale, the
Texas Court of Criminal Appeals has recently held that  “[t]he odor of marijuana, standing alone,
does not authorize a warrantless search and seizure
in a home.”  State v. Steelman, 93 S.W.3d at 108.  In Steelman, police received a tip that drug dealing was taking
place at the defendants’ residence.  The
police knocked on the door and, when one defendant opened the door, smelled the
odor of burnt marijuana.  Id. at
103.  As with Barocio,
the defendant who answered the door stepped outside.  As with Barocio,
the police asked the defendant for identification.  As with Barocio,
when he turned and entered the home, the police entered the home behind him
without consent.  Id. at 104.
Once inside, the police arrested the defendant and the other occupants of the
home.  The court held that the odor of
marijuana did not give police probable cause for the arrest.  Id. at
108.  Similarly, in applying Steelman to this
case, we hold that the odor of marijuana alone did not provide probable cause
for the warrantless entry into Barocio’s
home.

            The dissent engages in lengthy
commentary about the plain smell of marijuana, citing cases from New
 Jersey, Wisconsin, Ohio, and California.  We acknowledge the academic and judicial
debate about the “plain smell” doctrine.[2]   Nonetheless, it is merely an academic
exercise for an intermediate court to initiate such a debate when the issue has
been decided by our state’s highest criminal court.

            Further, the dissent devises both
probable cause and exigency by pairing the marijuana odor with suspicions that Barocio was a burglar.[3]  Certainly, police can enter a home to
investigate a burglary-in-progress.  See In re J.D., 68 S.W.3d 775 (Tex.
App.—San Antonio 2001, pet. denied) (two teens with a rifle seen entering yard
from alley; police see signs of burglary at home and hear people within, though
no one responded to police’s shouts). 
However, in none of the dissent’s cases did the police enter to
investigate a burglary after
detaining the sole suspect.[4]  If the officers had articulated facts
reasonably showing other persons were in Barocio’s
home, whether victims or accomplices, no doubt the State would have argued on
appeal the emergency doctrine, which is the basis of the cases cited by the
dissent.[5]  See Brimage v. State, 918 S.W.2d 466, 500–01 (Tex. Crim. App. 1994).[6]  The dissent’s stance also ignores the State’s
concession at trial that investigation of a possible burglary did not provide
officers justification to enter Barocio’s home.[7]  Coupling odor and burglary suspicions, when
the sole suspect has been detained, is simply a red herring.[8]

            Finally, the dissent finds exigency
in the “likelihood” that the marijuana would have been destroyed if police left
to obtain a warrant.  Having held there
was no probable cause for the warrantless search, we
need not address exigency.  However, we
note that preventing the destruction of evidence or contraband can be an
exigent circumstance.  McNairy, 835 S.W.2d at 107.  To show such exigency, there must be evidence
that “the police could have reasonably concluded that evidence would be
destroyed or removed before they could obtain a search warrant.”  Covarrubia v. State,
902 S.W.2d 549, 553 (Tex. App.—Houston [1st Dist.] 1995, pet. ref’d).  The dissent
reasons that Barocio became aware of police presence
when he emerged from his home and might of then disposed of the marijuana if
they left to obtain a warrant.  We note,
however, that the police never left Barocio’s home
while they obtained a search warrant, which a third officer delivered.  During their short wait, the police detained Barocio in the back of a police car.  The dissent also reasons that the odor of
burnt marijuana indicated that the evidence was in the process of being
destroyed.  However, “the presence of
drugs alone does not give rise to exigent circumstances justifying a warrantless entry and search.”  United States v. Howard, 106 F.3d 70, 73 (5th Cir.
1997).  There must be facts from which
police could have reasonably concluded the marijuana was in danger of
destruction.  In fact, the officer who
delivered the search warrant to Barocio’s home
testified there was no rush because Barocio had been
detained.  Lastly, the dissent cannot
find exigency through the possible destruction of evidence when police send a
defendant inside for identification. 
Exigent circumstances do not pass Fourth Amendment muster if the police
deliberately create them.  United States v. Richard, 994 F.2d 244, 248 (5th Cir.
1993).

            The dissent has valiantly attempted
to factually distinguish Steelman
and Johnson.  However, attempting to factually distinguish Steelman from the
instant case “leaves the people’s homes secure only in the discretion of police
officers.”  Johnson, 333 U.S. at 13–14. 
Following Steelman,
which is the law in Texas, and Johnson,
from our nation’s highest court, we hold there was no probable cause for the warrantless search of Barocio’s
home.

                                                     Inevitable
Discovery

            Although the bag of marijuana was
discovered during the officers’ improper entry, the State nonetheless contends
that it was seized in good faith reliance on a facially valid search warrant
issued by a neutral magistrate based on probable cause.  See
Tex. Code Crim.
Proc. Ann. art. 38.23(b) (Vernon Pamph.
2003).  This argument implicitly asks us
to find two things: (1) the warrant was valid despite untruths in the affidavit
through which it was procured[9] and
(2) its execution would have inevitably led to discovery of the marijuana.

            The inevitable discovery doctrine is
an exception to the federal exclusionary rule by which evidence is admissible
if the prosecution can establish that it inevitably would have been discovered
by lawful means.  Price v. State, 93 S.W.3d 358, 370 (Tex. App.—Houston [14th
Dist.] 2002, pet. ref’d) (op. on reh’g).  However, there is no inevitable discovery
doctrine under  the Texas
exclusionary rule.  State v. Daugherty, 931 S.W.2d 268, 269 (Tex. Crim.
App. 1996).  “Once the illegality and its
causal connection to the evidence have been established, the evidence must be
excluded.”  Id. at
270.  We thus decline to apply the
inevitable discovery doctrine here.

                                                 Attenuation
of the Taint

            Lastly, the State contends that any
taint caused by the initial, warrantless entry was
attenuated by the subsequently procured search warrant.  See
Johnson v. State, 871 S.W.2d 744, 751 (Tex. Crim.
App. 1994) (permitting attenuation doctrine under Texas
exclusionary rule).  The State did not
argue the attenuation doctrine at the suppression hearing.  It cannot raise this theory for the first
time on appeal.  Steelman, 93 S.W.3d at 106–07; see Sedani v.
State, 848 S.W.2d 314, 318–21 (Tex. App.—Houston [1st Dist.] 1990, pet. ref’d) (op. on reh’g).

                                                                Conclusion

            Following Steelman, we hold that the odor
of marijuana did not give deputies probable cause for warrantless
entry into Barocio’s home.  Because the bag of marijuana was the fruit of
an illegal search, the trial court should have suppressed evidence of it.  See
Wong Sun v. United States, 371 U.S. 471, 488
(1963) (holding that under the “fruit of the poisonous tree” doctrine, evidence
derived directly or indirectly from illegal governmental activity is excluded
as trial evidence).  Further, evidence
about the bag of marijuana may not be admitted under inevitable discovery or
attenuation-of-the-taint doctrines. 
Accordingly, we sustain Barocio’s issues,
reverse his conviction, and remand to the trial court for further proceedings
consistent with this opinion.

 

                                                                                    

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment rendered and Plurality and
Dissenting Opinions filed June 19,
 2003.

Panel
consists of Justices Edelman, Seymore, and Guzman.  (Edelman, J. concurs in result only.  Guzman, J. dissenting.)

 

Publish
— Tex. R. App. P. 47.2(b).

 

 











            [1]  “When the right of privacy must reasonably
yield to the right of search is, as a rule, to be decided by a judicial
officer, not by a policeman or Government enforcement agent.” 
Johnson, 333 U.S. at 14; see Steelman, 93 S.W.3d at 112–13
(Cochran, J., concurring) (quoting Johnson).






            [2]  See,
e.g., Michael A. Sprow, Comment, Wake Up and Smell the Contraband: Why Courts
that Do Not Find Probable Cause Based on Odor Alone Are Wrong, 42 Wm. & Mary L. Rev. 289 (2000).  The author largely relies upon cases in which
contraband was smelled in cars, and he naively opines, “[W]arrantless
searches of a home or other building will not be widespread in a plain smell
jurisdiction.”  Id. 315.





            [3]  The dissent invents an all-inclusive burglary
investigation.  In contrast, the
testimony shows that Officer Kirsch’s burglary investigation was limited to
obtaining Barocio’s identification.





            [4]  An investigative detention allows an officer
to determine a person’s identity or maintain the status quo while the officer
obtains more information.  Gaines v. State, 99 S.W.3d 660, 666 (Tex. App.—Houston [14th Dist.] 2003, no
pet.).





            [5]  Officer Kirsch looked through the remainder
of the home because “it’s just protocol.” 
The dissent airily excuses a total lack of evidence that he reasonably
believed others were present in the home. 
In so doing, the dissent tosses aside search and seizure law, issues an
advisory opinion, and permits matter-of-course exigency on the presumption that
all suspected burglars are “predators.”  Compare United States v. Erickson, 991
F.2d 529, 533 (9th Cir. 1993) (no search permitted for community caretaking
where police peered in burglarized home and observed marijuana plants) with In
re Sealed Case 96-3167, 153 F.3d 759, 767 (D.C. Cir. 1998) (exigency
existed because of danger posed by suspected burglar whom police observed force
entry and whom they chased up the home’s darkened staircase) (both cases cited
by dissent).





            [6]  The emergency doctrine allows a warrantless search where police have “reasonable cause to
believe that, absent an immediate search, serious bodily harm or death may result.”  Brimage, 918 S.W.2d at 500–01.  





            [7]  The State argued that if police smell
marijuana while investigating a different crime, police can enter a home based
on the odor.  The State concluded, “So
then we really have two reasons for the case for them to enter.  One, the investigation of the burglary.  That doesn’t get them in but the odor of
marijuana then lets them in the door.”





            [8]  The dissent invites us to unnecessarily
distinguish particular cases and particular facts.  We decline to engage in countless
rejoinders.  We also decline to release
an advisory opinion about whether a car parked with its driver’s door open, pry
marks on a door, and a surveillance camera give police probable cause and
exigency to search absent detention
of the suspected burglar.  Despite citing
an “exhaustive” article about burglary as an exigent circumstance, the dissent
still fails to provide a single case permitting entry in a home after police
detain the sole suspect.





            [9]   Deputy Montford
averred that Deputy Wyatt saw the marijuana in plain view while standing on Barocio’s front porch. 
Photographs at trial proved that such a line of sight was impossible,
and Deputy Wyatt denied observing the marijuana before the search warrant was
issued.  Further, Deputy Montford recited that one of the officers observed smoke in
the home, which was untrue.