In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00161-CR

                                                ______________________________

 

 

                                             PAULA
SOSA, Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                            On Appeal from the County Court at Law

                                                           Harrison County, Texas

                                                         Trial Court
No. 2009-0198

 

                                                             
                                     

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Paula Sosa
filed a motion to suppress the evidence of her intoxication, which Texas
Department of Public Safety Trooper Joe Hill discovered when he interacted with
her late one night as she was parked at the entrance to some Marshall
self-storage units.[1]  In the hearing on Sosa’s suppression motion,
the parties focused on the issue of whether Hill had reasonable suspicion to
justify what the parties reasonably assumed was an investigative
detention.  After the trial court denied
Sosa’s requested suppression of the evidence, Sosa pled guilty to driving while
intoxicated.[2]  She now appeals, urging, as her lone
appellate issue, that the evidence should have been suppressed.[3]  Because Hill had insufficient articulable
facts to establish reasonable suspicion to support the investigative detention,
we sustain Sosa’s point of error, reversing and remanding to the trial court
for further proceedings consistent with this opinion.

            A trial court’s decision on a motion to
suppress evidence is reviewed by applying a bifurcated standard of review
deferring to the trial court’s determination of historical facts that depend on
credibility, but reviewing de novo the trial court’s application of the
law.  Burke
v. State, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref’d).  The appellate court affords almost total
deference to a trial court’s determination of the historical facts supported by
the record, especially when the trial court’s fact findings are based on an
evaluation of credibility and demeanor.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State,
985 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
The court also affords such deference to a trial court’s ruling on “application
of law to fact questions,” also known as “mixed questions of law and fact,” if
the resolution of those questions turns on an evaluation of credibility and
demeanor.  Guzman, 985 S.W.2d at 89. 
The appellate court, though, reviews de novo those questions not turning
on credibility and demeanor.  Id.

            The parties
in this case presumed in the trial court that the initial interaction between
Hill and Sosa was an investigative detention.[4]  Neither party argued to the trial court that
the initial interaction was an encounter.

            A temporary or investigative
detention is a seizure.  Josey v. State, 981 S.W.2d 831, 838
(Tex. App.—Houston [14th Dist.] 1998, pet. ref’d).  Therefore, a certain objective level of
suspicion must be shown by the officer to justify the seizure.  State
v. Larue, 28 S.W.3d 549, 553 n.8 (Tex. Crim. App. 2000).  The officer must show reasonable suspicion
the citizen is connected to criminal activity. 
Id.

            The
United States Supreme Court in Terry v. Ohio established the test for
investigative detentions.  Terry
established a two-pronged test for investigative detentions.  Terry v. Ohio, 392 U.S. 1, 19–20 (1968). 
To determine the reasonableness of an investigative detention, the court
must inquire:  “(1) whether the officer’s
action was justified at its inception; and, (2) whether it was reasonably
related in scope to the circumstances which justified the interference in the
first place.”  Davis v. State, 947 S.W.2d 240, 242 (Tex. Crim.
App. 1997); see Terry,
392 U.S. at 19–20.   “Under
the first prong, ‘the police officer must be able to point to specific and
articulable facts which, taken together with rational inferences from those
facts, reasonably warrant that intrusion.’” 
Id. (quoting Terry, 392 U.S. at 21).  These facts must be more than a mere hunch or
suspicion.  Id. at 244.   Whether the officer’s suspicion was
reasonable is evaluated based on “an objective standard that disregards any
subjective intent of the officer making the stop and looks solely to whether an
objective basis for the stop exists.”  Ford v. State, 158 S.W.3d 488, 492 (Tex.
Crim. App. 2005).  The specific,
articulable facts, along with rational inferences from those facts, must allow
the officer to reasonably conclude the person detained actually is, has been,
or soon will be engaged in criminal activity. 
United States v. Sokolow,
490 U.S. 1, 10 (1989).

            Most of Hill’s
specific, articulable facts concern the fact that Sosa was present just outside
the storage facility after its normal business hours and failed to pass through
the gate in the thirty or forty seconds of observation.  Hill testified that he believed,[5]
based on his mother renting a unit two years before the events in question,
that the normal business hours of the facility were from 7:00 a.m. to 7:00
p.m.  There was also a sign on the gate
providing notice that the facility was open from 7:00 a.m. to 7:00 p.m.  “[T]he fact that a car is parked in close
proximity to a business that is closed for the day, is not, in and of itself,
suspicious; instead, it is only a factor to consider in deciding whether there
is reasonable suspicion.”  Klare v. State, 76 S.W.3d 68, 74 (Tex.
App.—Houston [14th Dist.] 2002, pet. ref’d). 


            In addition,
the time of day is not sufficient.  While
the time of day can be considered, it is only one factor and is insufficient,
by itself, to create reasonable suspicion. 
Crain, 315 S.W.3d at 53; Klare, 76 S.W.3d at 74.  Because the time of day does not “ prov[e] that the suspect is engaged in any sort of
criminal offense,” other circumstances must raise a suspicion that the
particular person is engaged in illegal behavior.  Crain,
315 S.W.3d at 53.

            Even
together, Sosa’s presence after hours and the lateness of the hour are
insufficient to create reasonable suspicion. 
Klare, 76 S.W.3d at 74
(presence outside business after hours, very late hour, and incidence of crime
in area, insufficient).[6]

            Behavior
that is, in itself, innocent, can certainly provide the basis for a showing of
reasonable suspicion.  Sokolow, 490 U.S. at 10.  “[T]he relevant inquiry is not whether
particular conduct is innocent or criminal, but the degree of suspicion that
attaches to particular types of noncriminal acts.”  Woods
v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (rejecting
as-consistent-with-innocent-activity test).

            The Texas
Court of Criminal Appeals recently released an opinion finding reasonable
suspicion in an admittedly close case involving otherwise innocent
behavior.  See Derichsweiler v. State,
No. PD-0176-10, 2011 Tex. Crim. App. LEXIS 112, at *27 (Tex. Crim. App. Jan.
26, 2010).  Derichsweiler, though, is distinguishable from this case.  In Derichsweiler,
noncriminal behavior—repeatedly stopping near and staring at other people in
public parking lots—was held sufficient to allow a reasonable person to
conclude “that criminal activity is afoot.” 
Id. at 17.   The court
characterized Derichsweiler’s conduct as “bizarre to say the least.”  Id. at
25.  The court emphasized Derichsweiler’s
conduct involved “the repetition of similar, apparently scrutinizing behavior”
and was “persistent, if admittedly noncriminal.”  Id.
at 25–27.  In other words, the conduct in
Derichsweiler involved a pattern of
bizarre behavior.  In this case, Sosa’s
behavior could not be described as bizarre and nothing suggests a pattern or
repetition of unusual behavior.  The
noncriminal, not terribly unusual, nonrepetitive behavior observed in this case
was insufficient to objectively support a belief that criminal activity was or
soon would be afoot.

            The specific,
articulable facts relied on by Hill are insufficient to create reasonable
suspicion that criminal activity was occurring. 
All the facts indicate is that Sosa was present in front of a business
late at night, after normal business hours, and that storage buildings are
occasionally broken into.  Hill failed to
provide, under the totality of the circumstances, sufficient specific,
articulable facts to create an objective manifestation that Sosa was, or was
about to be, engaged in criminal activity. 
Hill’s suspicion amounted to nothing more than a mere hunch.  Deferring to the trial court’s determination
of historical facts, it was error to overrule Sosa’s motion to suppress.

            For the
reasons stated, we reverse and remand for proceedings consistent with this Court’s
opinion.

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date
Submitted:          January 26, 2011

Date
Decided:             February 4, 2011

 

Do
Not Publish











[1]While
on patrol, Hill observed Sosa parked at the entrance to DC Self Storage in
Marshall, Texas, at approximately 10:45 p.m. 
Based on Hill’s experience when Hill’s mother had previously rented a
unit from that storage facility, Hill believed the normal business hours of the
storage facility were from 7:00 a.m. to 7:00 p.m.  Hill proceeded past the storage facility and
stopped on the side of the road.  When
Sosa did not enter after thirty to forty seconds, Hill turned around, activated
his lights, and pulled in “behind her.” 
While conversing with Sosa, Hill detected the odor of alcohol on Sosa’s
breath and noticed that Sosa’s speech was slurred.  Subsequent investigation determined Sosa to
be intoxicated.

 





[2]The
trial court sentenced Sosa to 180 days in county jail and a $2,000.00 fine, suspended
the sentence, and placed Sosa on twelve months’ community supervision.  

 





[3]The
State provided this Court with a letter affirmatively declining to file a brief
in this case.





[4]If
the initial interaction between Sosa and Hill had been an encounter, reasonable
suspicion would not have been needed to overrule Sosa’s motion to
suppress.  The Fourth Amendment does not
require any justification whatsoever on the part of an officer who merely approaches
an individual in public to ask questions. 
United States v. Mendenhall, 446 U.S. 544, 555 (1980); Hunter
v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997).

                While
the traditional rule is that we should affirm if “the trial judge’s decision is
correct on any theory of law applicable to the case,”  Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990), several Texas courts
have suggested the State’s failure to present a theory to the trial court may
prevent that theory from being “applicable to the case.”  See,
e.g., State v. Allen, 53 S.W.3d
731, 733 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (concluding theories
not presented to trial court are not “applicable to the case”); State v. Gonzales, 850 S.W.2d 672, 675
(Tex. App.—San Antonio 1993, pet. ref’d) (“inappropriate for a reviewing court
to determine that the suppression of evidence is supported on other grounds
when the trial court did not address any other possible grounds for suppression”);
cf. Sedani v. State, 848 S.W.2d 314 (Tex. App.—Houston [1st Dist.]
1993, pet. ref’d) (concluding former Rule 52(a), the predecessor to Rule 33.1
of the Texas Rules of Appellate Procedure, applies to the appellee as well as
the appellant).  Although the Texas Court
of Criminal Appeals has yet to adopt this interpretation, it appears to have
applied it sub silentio in at least
two cases.  See Sanbury v. State, 88 S.W.3d 229 (Tex. Crim. App. 2002);
(because trial court did not consider Rule 403 of Texas Rules of Evidence, court
refused to consider it); State v.
Sheppard, 271 S.W.3d 281 (Tex. Crim. App. 2008).  But see
Rhodes v. State, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997) (affirming on
theory not argued to trial court).  This
Court has yet to adopt this interpretation of the general rule; yet, here, it
is not necessary, as this interaction was an investigative detention.

                There
are three categories of interactions between police officers and citizens:  encounters, investigative detentions, and
arrests.  State v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002).  An encounter is a purely consensual
interaction which a citizen may terminate at any time.  Saldivar
v. State, 209 S.W.3d 275, 281 (Tex. App.—Fort Worth 2006, no pet.).  Encounters
are consensual as long as the
person would feel free to go about his or her business.  Hunter, 955 S.W.2d at 104; see Florida v. Bostick, 501 U.S. 429, 434 (1991); California
v. Hodari D., 499 U.S. 621
(1991).

                An
encounter becomes a temporary detention if a “seizure” occurs.  A seizure of the person occurs when an
officer, by means of physical force or show of authority, has in some way
restrained the liberty of a citizen and the citizen has submitted to that
authority.  Bostick, 501 U.S. at
434; Hodari D., 499 U.S. 621; Johnson v. State,
912 S.W.2d 227, 235 (Tex. Crim. App. 1995). 
Such a determination is made based on the totality of the circumstances
surrounding the event.  Bostick, 501 U.S. at 439; Hunter,
955 S.W.2d at 104.  The crucial test is
whether, taking into account all of the circumstances surrounding the
encounter, the police conduct would have communicated to a reasonable person he
or she was not at liberty to ignore the police presence and go about his or her
business.  Bostick, 501 U.S. at 439; State v. Velasquez, 994 S.W.2d
676, 679 (Tex. Crim. App. 1999); Hunter, 955 S.W.2d at 104; Jackson
v. State, 77 S.W.3d 921, 927 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  A person “yields to an officer’s display of
authority” when a reasonable person would not feel free to leave the officer’s
presence or otherwise terminate the encounter. 
Bostick, 501 U.S. 429; State v. Velasquez, 994 S.W.2d 676,
679 (Tex. Crim. App. 1999).

                In
this case, Hill’s show of authority was sufficient to communicate to a
reasonable person that he or she was not free to leave the scene.  Hill testified Sosa was not free to
leave.  Although the classification of an
interaction is determined based on an objective standard and, therefore, the
police officer’s subjective opinion is not determinative, Hill’s subjective
opinion can be evidence that a reasonable person would not feel free to
terminate the interaction.  See Whren v. United States, 517
U.S. 806 (1996) (reasonable suspicion evaluated from objective
perspective).  The manner in which Hill
parked his vehicle and the use of overhead emergency lights suggest the
interaction was an investigative detention. 
Since Sosa was parked in front of the storage facility’s gate, the
position of Hill’s vehicle effectively prevented her vehicle from moving.  Sosa’s vehicle seems to have been trapped
between the storage facility’s gate and Hill’s vehicle.  The Texas Court of Criminal Appeals has
considered the fact that a police officer “‘boxed in’ Appellee’s parked truck”
in determining whether a seizure had occurred.  See State
v. Garcia-Cantu, 253 S.W.3d 236, 246 n.44 (Tex. Crim. App. 2008)
(concluding trial court did not err in concluding reasonable person would not
feel free to leave).

                Although
“[a]ctivation of overhead lights on a police vehicle does not necessarily make
an encounter non-consensual,” the Texas Court of Criminal Appeals has noted:  “The use of ‘blue flashers’ or police
emergency lights are frequently held sufficient to constitute a detention or
seizure of a citizen, either in a parked or moving car.”  Id. at
245 n.43 (spotlight different from overhead lights); see Crain v. State, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010)
(activation of overhead lights factor in concluding pedestrian was detained); Hudson v. State, 247 S.W.3d 780, 785
(Tex. App.—Amarillo 2008, no pet.) (activation of patrol car lights and police
officer’s order caused appellant to yield to show of authority); see Franks
v. State, 241 S.W.3d 135, 142 (Tex. App.—Austin 2007, pet. ref’d) (mere
activation of overhead lights at dark rest park was insufficient, by itself, to
make initial interaction a detention).  Franks is distinguishable in that,
there, no evidence suggested that the position of the police car impeded Franks’
ability to terminate the encounter.  Franks, 241 S.W.3d at 142.  Further, the police officer in Franks testified he activated the
overhead lights to illuminate the rest area. 
Id.  There is no evidence in this case that Hill
activated his overhead lights to illuminate the storage facility’s entry
area.  When asked whether the area “is
fairly well lit,” Hill responded, “I’d say fairly.  It’s not as well lit as you get going on into
town.”

                The
assumption of both Sosa and the State that the interaction in this case was an
investigative detention was a reasonable assumption, with which we agree.





[5]Dennis
Hulett, the owner of the storage facility, testified some customers are
provided with twenty-four-hour access codes if they are unable to access the
units between 7:00 a.m. and 7:00 p.m., and there is an after hours telephone
number customers can call.  Sosa was not
provided with a twenty-four-hour access code. 
Hill testified he was not aware that some customers are provided with
twenty-four-hour access codes.  As the
trial court correctly stated, the relevant inquiry concerns the facts the
officer reasonably believes are true even if the reasonable belief was
incorrect.  See Garcia v. State, 43
S.W.3d 527, 530 (Tex. Crim. App. 2001); Madden v. State, 242 S.W.3d 504, 508 n.7 (Tex. Crim. App. 2007)
(police officers “may be mistaken about an historical fact . . . as long as that
mistake was not unreasonable”); cf. Fowler
v. State, 266 S.W.3d 498, 504 (Tex. App.—Fort Worth 2008, pet. ref’d)
(reasonable suspicion, though, “cannot be based on a mistaken understanding” of
the law); Goudeau v. State, 209
S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.)
(Reasonable suspicion cannot be “solely based on a mistaken understanding of  the traffic law.”).  We will defer to the trial court’s implicit
finding that Hill reasonably believed the normal business hours were from 7:00
a.m. to 7:00 p.m.





[6]Hill
also testified he believed criminal activity might be occurring because “portable
buildings and storage buildings get broken into and robbed a lot.”  Hill testified that the area did not have a
high incidence of crime and that he had no knowledge of any recent reports of
theft in this area.  In our view, that
adds little.